United States District Court
Southern District of Texas
**ENTERED**
October 27, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMIA YOUNG-TREZVANT, *Plaintiff*, | § § § | |
| v. | § § | CIVIL ACTION NO. 4:23-CV-1695 |
| LONE STAR COLLEGE SYSTEM, *Defendant*. | § § § § | |

**ORDER**

Before the Court is Defendant Lone Star College System's Motion to Dismiss. (Doc. No. 5). Plaintiff Amia Young-Trezvant responded in opposition (Doc. No. 7), Defendant replied (Doc. No. 10), and Plaintiff filed a sur-reply. (Doc. No. 15). Plaintiff's pleading which initiated this lawsuit is styled a "civil petition," which is more aligned with state court nomenclature, and her sur-reply is styled a "reply." The Court recognizes that Plaintiff is proceeding *pro se*, and these factors have not caused confusion to either Defendant or the Court and are only mentioned here so there is no misunderstanding as to which pleading is being referenced.

**I. Background**

Plaintiff alleges various causes of action in her petition which all seemingly arose out of her relationship (or lack thereof) with her boss, Diona West, at the Defendant's library where she worked. Plaintiff factually alleges the following:

- On December 21, 2021, West allegedly called Plaintiff "several times during the holiday break," "insisted that [Plaintiff] return her call," and stated that it was "'mandatory' that [Plaintiff] work during the holiday break." (Doc. No. 1-1 at ¶ 2). She alleges that West then sent Plaintiff a "very aggressive" email that Plaintiff alleges had a "tone" of "coerce [sic] and lacked respect." (*Id.*). Plaintiff alleges that she contacted Human Resources who "clear[ed] up the matter," and "corrected" West. (*Id.*).
- On January 14, 2022, at the end of a "monthly circulation meeting," West allegedly "shared childhood memories and stated [that] . . . 'Growing up, I used to

act fake rich like Amia,'" which made Plaintiff feel "extremely uncomfortable." (*Id.* at ¶ 3).

- On March 24, 2022, West allegedly called Plaintiff into her office to "discuss why [Plaintiff] called in sick a couple of days prior." (*Id.* at ¶ 4). Plaintiff told West that she "had an asthma attack and was admitted into the hospital." (*Id.*). Plaintiff alleges that West "question[ed] the truthfulness" of Plaintiff's statements, which again made Plaintiff "extremely uncomfortable." (*Id.*).
- On May 26, 2022, West allegedly "called a meeting," the participants in which were "split into two groups." (*Id.* at ¶ 5). Plaintiff alleges that "[w]hen the second group returned from the meeting, several [of Plaintiff's] coworkers . . . stated that [West] spread false rumors about" Plaintiff. (*Id.*).
- On August 22, 2022, during another "circulation meeting," "raises were brought to our attention." (*Id.* at ¶ 6). She alleges that a "coworker" stated, "Wow, Amia you could really benefit from getting a raise," and that West "laughed at [this] comment."
- On September 13, 2022, West allegedly emailed Plaintiff regarding "expectations for taking time off," which allegedly made Plaintiff "feel as though [West was] trying to think of methods to fire [Plaintiff]." (*Id.* at ¶ 7). Plaintiff alleges that she contacted Human Resources about this "to clarify things." (*Id.*).
- On September 28, 2022, Plaintiff met with two individuals "along with [her] [unnamed] witness" to "discuss and initiate an investigation." (*Id.* at ¶ 8).
- On October 17, 2022, she filed a police report with the campus police because her "vehicle mysteriously [was] hit in the parking lot" while she was in the building. (*Id.* at ¶ 10).
- On October 28, 2022, West allegedly "began sending emails [and] creating false accusations against" Plaintiff. (*Id.* at ¶ 11).
- On November 1, 2022, Plaintiff received a letter from the Human Resources department which informed her that the investigation that she had initiated on September 28, 2022 "was complete, but there was no resolve [*sic*] or communicated outcome." (*Id.* at ¶ 9).
- On November 1, 2022, West allegedly "spamm[ed] [Plaintiff] with emails regarding [her] leave of absence the week before," which Plaintiff found to be a form of "harassment." (*Id.* at ¶ 13). Plaintiff alleges that the alleged "harassment worsened after receipt of HR's investigation determination," even though there was apparently "no determination included in the letter [she] received." (*Id.* at ¶ 12).
- Plaintiff submitted a Grievance with Dr. Matthew Dempsey on November 10, 2022. (*Id.* at ¶ 14). She alleges that Dr. Dempsey "did not proceed" with the Grievance because Plaintiff needed to first "attempt to resolve this informally with [her] supervisor." Plaintiff found this "quite disturbing" because her supervisor "was the one [allegedly] harassing [her]." (*Id.*). Dr. Dempsey allegedly "went on to mention that he did not see [Plaintiff's] attempts to resolve the matter with [West] on [Plaintiff's] timeline and to provide him with documentation of such attempt before he could proceed with next steps." (*Id.*).

- On November 14, 2022, Plaintiff allegedly notified the President of Lone Star CollegeCyFair, Valerie Jones, of Plaintiff's concerns. (*Id.* at ¶ 15).
- On December 7, 2022, Plaintiff requested mediation with the Dispute Resolution Center but her request was denied on December 9, 2022. (*Id.* at ¶¶ 16–17).
- On January 25, 2023, Plaintiff emailed a second Notification to Dr. Dempsey and President Jones regarding West's alleged "refusal to attend mediation." (*Id.* at ¶ 18).
- On February 13, 2023, Plaintiff notified Dr. Dempsey and President Jones regarding an incident involving an alleged "attempt to withhold [Plaintiff's] cell phone/home access key that was left in the 'secure room.'" (*Id.* at ¶ 19).

Based upon these factual allegations, Plaintiff has pleaded multiple tort-based causes of action, including: (1) negligent misrepresentation; (2) negligence; (3) gross negligence; (4) fraud; (5) breach of good faith and fair dealing; (6) defamation; and (7) wrongful termination. She also alleges state law claims for breach of contract, breach of "policy," and claims under the Deceptive Trade Practices Act ("DTPA"). Finally, she makes claims for violation of Title IX and Texas Commission on Human Rights Act (TCHRA), including harassment, discrimination, and retaliation.

Plaintiff apparently worked for Defendant from October 18, 2021, until she was terminated on February 21, 2023. According to the Defendant, she was terminated for failing to come to work and for failing to meet with her supervisor. Plaintiff, obviously, does not agree as to the cause of her discharge.

## II. Governing Law

Defendant claims that Plaintiff's petition should be dismissed either under Rule 12(b)(1) or Rule 12(b)(6) of the Federal Rules of Civil Procedure.

*Rule 12(b)(1)*

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. FED. R. CIV. P. 12(b)(1). Lack of subject matter jurisdiction may be found in any one of three instances: (1) the

3

complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).

The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995). Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam). This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. *Id.* The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination on the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction. *Id.*

In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).

*Rule 12(b)(6)*

A defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). Similarly, a plaintiff may file a Rule

12(b)(6) motion to dismiss a counterclaim. *See Kansas v. Nebraska*, 527 U.S. 1020 (1999). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

### III. Analysis

Defendant claims that governmental immunity bars the majority of Plaintiff's claims. "Governmental immunity from suit defeats a trial court's jurisdiction...." *Morgan v. Plano Indep. Sch. Dist.*, 724 F.3d 579, 582 (5th Cir. 2013). The Defendant is organized as a junior college district under Chapter 130 of the Texas Education Code. Tex. Edu. Code § 130 *et seq*. It

is therefore a subdivision of the State of Texas and is entitled to governmental immunity. *Tercero v. Tex. Southmost Coll. Dist.*, 989 F.3d 291, 297 (5th Cir. 2021). While Plaintiff disputes this claim, she offers no evidence or legal argument that supports the denial of governmental immunity in this instance.

As a political subdivision of the state that is entitled to governmental immunity, Defendant cannot be sued unless that immunity has been waived. In Texas, the waiver for junior colleges is limited to negligence claims involving motor vehicles. *Wood v. Coastal Bend Coll.*, 2010 WL 2136621, at *4 (Tex. App.—May 27, 2010, pet. denied). There are no claims made by the Plaintiff involving motor vehicles. As a result, all of Plaintiff's tort-based claims including negligence, fraud, breach of good faith and fair dealing, defamation, wrongful termination, negligence, and gross negligence are all barred by immunity. That being the case, this Court has no jurisdiction over those claims and hereby dismisses them. Similarly, community colleges such as Defendant cannot be sued for breach of contract or for a deceptive trade practice unless a waiver exists. Here there is no such waiver. These claims are also dismissed.

While the TCHRA contains an inherent waiver, it is only applicable if one has accurately pleaded a prima facie case. Plaintiff has failed to do so. She has relied solely upon her youth (not race or gender) as a basis for her being a protected class, but she has not pleaded she is over 40 years old. Therefore, her TCHRA claim fails as well.[1]

As for Plaintiff's federal claims, she contends that she was subjected to a hostile work environment and retaliation for complaints she initiated against her supervisor. She characterizes these allegations as "…harassment and treating her differently because of her age." (Doc. No. 8 at 3). To the extent that Plaintiff has attempted to plead a cause of action against Lone Star

---

[1] In fact, Plaintiff makes it clear in her response that her age claim is made on the basis of her youth. In her reply, she states she was "the youngest full-time employee in the department." (Doc. No. 7 at 9).

6

College under the ADEA, her claims are barred because Lone Star College (as discussed previously) is an arm of the State of Texas. It is therefore entitled to "the same immunity as the State of Texas absent waiver or abrogation." *Chun- Sheng Yu v. Univ. of Hous. at Vict.*, No. H-16-3138, 2017 U.S. Dist. LEXIS 135310 at *8 (S.D. Tex. Aug. 23, 2017). The Supreme Court has concluded that "the ADEA's purported abrogation of the States' sovereign immunity [was]...invalid." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91 (2000). There is nothing to indicate that the State of Texas waived its immunity to suit under the ADEA; as a result, any claim Plaintiff may have stated under the ADEA is barred. *See Lowery v. Univ. of Hous.*, 82 F. Supp. 2d 689, 693 (S.D. Tex. 2000).

Plaintiff also states a cause of action under Title IX, which would not be barred by immunity. Indeed, Defendant concedes that its motion to dismiss Plaintiff's claims under Title IX are based upon Rule 12(b)(6). (Doc. No. 10 at 3). In Plaintiff's Response to Lone Star's Motion to Dismiss, however, she seems to characterize her claims alternatively under Title VII. The Court notes that one cannot raise new claims in a response but will address their sufficiency anyway. The Court will therefore address the requirements to state a prima facie case for discrimination and retaliation under Title IX and Title VII.

The Fifth Circuit has held that "Title VII is the exclusive remedial scheme for employment discrimination claims, including hostile work environment claims." *Normore v. Dall. Indep. Sch. Dist.*, Civil Action No. 3:18-CV-2506-N, 2019 U.S. Dist. LEXIS 85166, at *8 (N.D. Tex. May 21, 2019) (citing *Lakoski v. James*, 66 F.3d 751, 754 (5th Cir. 1995)). Thus, Plaintiff's Title IX hostile work environment claim is preempted by Title VII. *Id.* For retaliation claims, the Fifth Circuit distinguishes between claims related to "retaliation suffered by the [employee] as a consequence of her participation in complaints and investigations challenging

7

employment discrimination," which are preempted by Title VII, and claims related to "retaliation suffered as a consequence of her participation in complaints and investigations challenging alleged violations of Title IX," which are not preempted. *Taylor-Travis v. Jackson State Univ.*, 984 F.3d 1107, 1110 (5th Cir. 2021). These claims are clearly the former. To the extent that Plaintiff asserts retaliation claims under Title IX, these claims are preempted by Title VII because she is challenging discrimination that she alleges she suffered as an employee rather than, for example, "the misallocation of resources in violation of Title IX." *Id.*

If, on the other hand, Plaintiff is asserting sex discrimination under Title VII, she fails to state a prima facie case based on the conduct alleged. Title VII prohibits an employer's discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In this context, to establish a prima facie case of discrimination based on harassment, Plaintiff must plead facts that, if true, demonstrate: "(1) she belongs to a protected class, (2) she was subject to unwelcome…harassment, (3) the harassment was based on a protected characteristic, and (4) the harassment affected a term, condition, or privilege of employment." *Heath v. Elaasar*, 763 Fed. Appx. 351, 353 (5th Cir 2019).

Plaintiff has alleged a myriad of acts that she categorizes as hostile or harassing, including that she was contacted several times during holiday break, that her supervisor made several comments which alluded to her salary or lifestyle, and that her supervisor sent aggressive emails regarding a leave of absence she requested. Importantly, she has not alleged that the harassment was "based on a protected characteristic" and therefore fails to state a prima facie case of sex discrimination under Title VII. *See Heath*, 763 Fed. Appx. at 353.

To state a Title VII retaliation claim, a plaintiff must plead that "(1) [s]he participated in an activity protected by Title VII; (2) [her] employer took an adverse employment action against [her]; and (3) a causal connection exists between the protected activity and the adverse employment action." *Leal v. McHugh*, 731 F.3d 405, 416–17 (5th Cir. 2013).

She has not alleged that she complained of any sex-based discrimination, nor has she set out that she participated in a protected activity or that the actual decision makers knew of that activity and terminated her for it. Therefore, she fails to state a prima facie case of retaliation under Title VII. Indeed, the Fifth Circuit has written that "making a general complaint about mistreatment or hostile work environments does not qualify as protected activity under Title VII." *Quintero v. Texas*, No. 22-50916, 2023 U.S. App. LEXIS 21302 at *8 (5th Cir. Aug. 15, 2023) (citations omitted). For the foregoing reasons, Plaintiff failed to satisfy the requirements to state a prima facie case for discrimination or retaliation under Title VII.

### IV. Conclusion

Plaintiff's claims based upon Texas state law are hereby dismissed due to governmental immunity which deprives this Court of jurisdiction. Consequently, Defendant's Rule 12(b)(1) motion is granted.[2] Her federal law claims do not set out a claim upon which relief can be granted. Therefore, they are dismissed pursuant to Rule 12(b)(6). This case is consequently dismissed in its entirety.

SIGNED this 27th day of October 2023.

Andrew S. Hanen
United States District Judge

---

[2] This Court did not address the fact that Plaintiff's TCHRA claim failed under Rule 12(b)(6) as well as Rule 12(b)(1) because a discussion on that holding in addition to the Rule 12(b)(1) holding would have been superfluous.